# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COILUMBIA

| | |
|---|---|
| MAYA BROOKS<br>3307 4th Street, S.E., Unit C<br>Washington, D.C. 20032,<br><br>and<br><br>JANICE CURTIS<br>4233 Blaine Street, N.E., #003<br>Washington, D.C. 20019,<br><br>and<br><br>KEISHA WHITLOCK<br>6656 Georgia Avenue, N.W., Apt. 301<br>Washington, D.C. 20012,<br><br>                Plaintiffs,<br><br>      v.<br><br>KARL STEPHENS<br>8719 Geren Road<br>Silver Spring, Maryland 20901,<br><br>and<br><br>METROPOLITAN PROCESS SERVICES, LLC<br>8719 Geren Road<br>Silver Spring, Maryland 20901,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

For their Complaint against Defendants Karl Stephens and Metropolitan Process Services, LLC, Plaintiffs Maya Brooks, Janice Curtis, and Keisha Whitlock allege as follows:

## NATURE OF ACTION

1.     This is an action for actual damages, statutory damages, attorneys' fees and costs based on Defendants' violation of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e.  This case arises out of Defendants' knowingly false swearing and submission of affidavits of service asserting that Defendant Stephens had attempted to serve and actually served process on Plaintiffs when in fact he did not.

2.     Defendant Stephens and/or his company, Defendant Metropolitan Process Services, LLC ("Metropolitan"), are the process servers of record for the vast majority of eviction cases filed in the Landlord-Tenant Branch of the District of Columbia Superior Court ("L&T Court").  Stephens and Metropolitan are either unable or unwilling to attempt service for all of the L&T Court process they are retained to serve by landlords and/or their counsel. Accordingly, for a significant percentage of the process they are retained to serve, Stephens and Metropolitan resort to "sewer service," simply completing false affidavits to be used in L&T Court in which Defendants allege attempts at service that did not actually occur.

3.     Each of the affidavits of service submitted by Defendants, standing alone and viewed in the context of a single case, appears to be in order.  However, when these affidavits of service are reviewed together, obvious irregularities appear.  For example:

- In most cases, Stephens did not even individually sign and swear to the affidavits.  Hundreds of his affidavits, purportedly completed months apart, have the exact same signature in the exact same spot on the signature line, with the exact same notary seal, with the exact same smudge in the exact same place on the seal, and in many cases with the exact same purported notary signature.

- L&T Court rules only allow service by posting once two diligent attempts at personal or substituted service have been unsuccessful.  An examination of 1,555 suits filed in L&T Court in spring 2019 shows that, statistically, process servers other than Defendant Stephens and his colleague at Metropolitan, Matthew Buck, succeeded in effecting personal or substituted service in about

      50% of their cases.  Stephens or Buck completed the affidavit of service in 1,079 of these 1,555 cases.  Remarkably, they swore to having diligently attempted personal service in each of these cases, but swore that they were only able to serve a human being in three (or 0.2%) of their 1,079 cases.

- Comparing Stephens's affidavits of service in different cases shows him swearing to attempts at service that are physically impossible.  For example, Stephens swore to making two diligent attempts to serve Plaintiff Curtis with a Notice of Quit, but in affidavits of service filed in other cases he swore that he was miles away at the same time he was supposedly attempting service at Ms. Curtis's residence.  Examples abound of Stephens signing affidavits placing him in two different places at the same time.  Indeed, on information and belief, Stephens submitted affidavits of service swearing to attempts at personal service on D.C. tenants at their residences at a time when he was physically present in Maryland state court for a hearing related to his arrest for drunk driving.

4.       Plaintiffs are three of the many victims of Defendants' sewer service, as Defendants falsified affidavits of service in connection with Plaintiffs' eviction cases to falsely allege that Defendants had posted papers on Plaintiffs' doors, when in fact there was no attempt at service at all.

## JURISDICTION AND VENUE

5.       This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

7.       Plaintiff Maya Brooks is a resident of the District of Columbia.  She is a tenant and resides at 3307 4th Street, S.E., Unit C, Washington, D.C. 20032.

8. Plaintiff Janice Curtis is a resident of the District of Columbia. She is a tenant and resides at 4233 Blaine Street, N.E., #003, Washington, D.C. 20019.

9. Plaintiff Keisha Whitlock is a resident of the District of Columbia. She is a tenant and resides at 6656 Georgia Avenue, N.W., Apt. 301, Washington, D.C. 20012.

10. Defendant Karl Stephens is a resident of Silver Spring, Maryland. He is the President of Defendant Metropolitan. Either Defendant Stephens or his colleague at Metropolitan, Matthew Buck, is the process server of record for the majority of eviction actions filed in L&T Court. Defendant Stephens' acts as detailed herein are attributable to Metropolitan, the company umbrella under which he operates.

11. Defendant Metropolitan is a limited liability company headquartered in Silver Spring, Maryland. Defendant Stephens is the President of Metropolitan. Defendant Stephens and Metropolitan employee Matthew Buck regularly submit affidavits of service alleging that they attempted to complete service of process in the District of Columbia for eviction actions filed in L&T Court.

## FACTUAL BACKGROUND

### Background of L&T Court and Service of Process

12. Self-help evictions are illegal under District of Columbia law. Accordingly, a landlord may not evict a tenant in the District of Columbia in the absence of a judgment entered in L&T Court granting the landlord possession of the premises. In addition, where the basis for eviction is nonpayment of rent, District of Columbia law provides the tenant with the right to "redeem" the tenancy, even after entry of judgment and up until the day of eviction, by paying the amount of back rent owed.

13. Moreover, absent a valid waiver by the tenant, a landlord may not commence an eviction action in L&T Court without first serving a Notice to Quit or Cure ("Notice to Quit") on the tenant. The Notice to Quit must provide the tenant with at least thirty days to cure the alleged basis for eviction. Actions by the tenant to cure the alleged basis for eviction within the time allotted by a Notice of Quit bars the landlord from filing a suit for possession in L&T Court.

14. A summons and complaint may be served on the defendant in an action filed in L&T Court by (1) personal service on the defendant, (2) substituted service on a person over the age of 16 residing at or in possession of the premises, or (3) posting a copy of the door to the premises with a copy of the suit papers also mailed to the tenant. D.C. Code § 16-1502; L&T Court R. 4, comment. Service by posting, however, is disfavored under District of Columbia law and is constitutionally suspect. *Parker v. Frank Emmet Real Estate*, 451 A.2d 62, 64 & n.2 (D.C. 1982) (citing and quoting *Greene v. Lindsey*, 456 U.S. 444 (1982)). Accordingly, the D.C. Code has been construed by District of Columbia courts as allowing a landlord to effect service on a tenant by posting only after two "diligent and conscientious" efforts at personal or substituted service have been attempted and failed. *Id.* at 65. Under District of Columbia law, a diligent and conscientious effort at personal service requires two attempts at personal or substituted service on two different days at two different times of day. *Id.*

15. Metropolitan, through its two representatives, Defendant Stephens and Matthew Buck, is the process server of record for the vest majority of eviction actions filed in L&T Court. As noted above, undersigned counsel compiled data regarding service of process in 1,555 eviction cases filed in L&T Court in spring 2019 – cases from 2019 LTB 010301 and 2019 LTB 012855. Of those 1,555 cases, no affidavit of service was filed in 44 cases and one additional case had an illegible affidavit of service. Of the remaining 1,510 cases, Metropolitan, through

Stephens and Buck, was the process server of record in 1,079 of the cases, and other process servers were the process servers of record in the other 431 cases.

16. In L&T Court cases served by process servers other than Stephens and Buck, the process servers were able to successfully effect personal or substituted service in 216 of 431 cases, or 50.1% of all such cases. By contrast, while Stephens and Buck swore in affidavits that they had made two diligent attempts at personal service for each of the summonses and complaints they allegedly served, they claim to have succeeded in effecting personal or substituted service in only 3 of 1,079 cases, or 0.2% of such cases. Matthew Buck of Metropolitan was particularly hapless, swearing to making two attempts at personal service in each of 506 cases, for a total of 1,112 attempts at service, only to be unsuccessful in finding a live body at the premises on every single occasion.

17. Of the three (of 573) cases Defendant Stephens claimed to have successfully served by personal or substituted service, two of them have significant back stories to explain why they did not fall into Stephens's usual practice of alleging service by posting after falsely alleging diligent attempts at personal or substituted service. In one of the cases (2019 LTB 011911), the tenant was a business, and Stephens served an authorized recipient. In the other case (2019 LTB 012283), Stephens alleged service by posting and the tenant was defaulted, only for landlord's counsel to discover later that all papers had been served on the wrong apartment. Having learned that the tenant was actually resident in a rehabilitation center, landlord's counsel filed amended complaint and Stephens effected service of an amended complaint at the rehabilitation center.

18. The difference between personal and substituted service, on one hand, and service by posting, on the other, is not a matter of exalting form over substance. Statistically, a

defendant is far less likely to be defaulted if he or she has been served by personal or substituted service. Indeed, in the 1,555 cases studied, tenants served through posting were twice as likely be fail to appear and to be defaulted at their initial hearing. Equally problematic, when a process server alleges service by posting, there is no actual evidence of receipt of suit papers by any human being. The complete absence of human interaction in cases of alleged service by posting leads to "sewer service," where process servers simply fail to serve suit papers, swear that they did, and rely on largely unsophisticated and unrepresented defendants being unable to marshal evidence proving an absence of service by posting. Indeed, in the cases studied, tenants allegedly served by Defendant Stephens or Matthew Buck via posting were inexplicably absent from their initial hearings and defaulted at a *higher* rate than tenants served via posting by other process servers.

### Facts Relating to Plaintiff Maya Brooks

19. Maya Brooks's landlord sued her for possession of her unit in *Residential One, LLC v. Brooks*, No. 2019 LTB 012263, which was filed in L&T Court on or about June 13, 2019. That suit sought possession of Ms. Brooks's unit (subject to her right to redeem by paying any back rent owed), as well as a money judgment of $1,374.16.

20. On July 9, 2019, Defendant Stephens purported to swear to an affidavit of service in which he (1) falsely alleged to have diligently attempted to serve Ms. Brooks personally at 7:14 pm on June 30, 2019, and at 11:19 am on July 2, 2019; and (2) falsely alleged to have posted a copy of the summons and complaint on Ms. Brooks's door at 11:19 am on July 2, 2019.

21. The affidavit of service, while appearing in order on its face, is false and fraudulent in the following respects: (1) it does not appear to be actually signed by Defendant Stephens or the listed notary public; (2) Defendant Stephens did not, as he purports to swear,

make two diligent attempts at personal or substituted service; and (3) Defendant Stephens did not, as he purports to swear, actually post the summons and complaint from the eviction action on the door of Ms. Brooks's unit.

22. Indeed, a review of the affidavits of service undersigned counsel have been able to locate show that Defendant Stephens alleged to have attempted service on fifty (50) different residences on June 30, 2019, the day he allegedly first attempted personal or substituted service on Ms. Brooks's unit, including attempted service at forty-one (41) different residences in the roughly two hours between 6:05 pm and 8:07 pm. Mapping these alleged attempts at service makes it clear that having attempted service as alleged by Defendant Stephens is physically impossible.

23. The facts regarding Defendant Stephens's claimed efforts at effecting service on July 2, 2019, are, if anything, even worse. Undersigned counsel has been able to locate affidavits of service in which Defendant Stephens swore to making diligent attempts at serving process at seventy-eight (78) different residence in the District of Columbia during the morning hours of July 2, 2019, the morning Defendant Stephens swears to having attempted service on Ms. Brooks. In at least one instance, Defendant Stephens alleges to have attempted service at exactly the same time that morning at two residences that are 4.5 miles apart. On another occasion, Defendant Stephens swore to affidavits in which he alleged attempts to serve two residences 4.8 miles away from each other within one minute of each other.

### Facts Relating to Janice Curtis

24. Janice Curtis's landlord sued her for possession of her unit in *The Franklin Johnston Group Mgmt. & Dev. LLC v. Curtis*, No. 2019 LTB 017121, which was filed in L&T Court on or about August 9, 2019.

25. Prior to the landlord's filing of the suit for possession in L&T Court, its counsel prepared a Notice to Quit alleging that Ms. Curtis had breached her lease by "repeatedly causing damage to the Premises," with the only such damage specified being breaking the glass in her balcony door. The Notice to Quit specified that Ms. Curtis could cure the alleged breach of lease by, among other things, "reimbursing the Landlord for the cost of making repairs upon receipt of a bill of repairs."

26. Under District of Columbia law, service of this Notice to Quit, as well as Ms. Curtis's failure to cure the alleged breach within thirty days, were conditions precedent to the landlord's right to file an action for eviction.

27. On April 29, 2019, Defendant Stephens purported to swear to an affidavit of service in which he (1) falsely alleged to have diligently attempted to serve Ms. Curtis personally with the aforementioned Notice to Quit at 7:20 pm on April 28, 2019, and at 8:45 am on April 29, 2019; and (2) falsely alleged to have posted a copy of the Notice to Quit on Ms. Curtis's door at 8:45 am on April 29, 2019.

28. The affidavit of service, while appearing in order on its face, is false and fraudulent in the following respects: (1) it does not appear to be actually signed by Defendant Stephens or the listed notary public; (2) Defendant Stephens did not, as he purports to swear, make two diligent attempts at personal or substituted service; and (3) Defendant Stephens did not, as he purports to swear, actually post the summons and complaint from the eviction action on the door of Ms. Curtis's unit.

29. The falsity of Defendant' Stephens' affidavit of service is not reasonably debatable. As for his sworn representation that he attempted to serve Ms. Curtis at her residence at 7:20 pm on April 28, 2019, Stephens submitted affidavits in two other cases swearing that he

9

attempted service on apartments located at 1255 25th Street, N.W. at 7:20 pm (the same time he swears he attempted to serve Ms. Curtis) and 7:22 pm (two minutes later).  According to Google Maps, 1255 25th Street, N.W. is 9.7 miles (and 22 minutes of drive time) away from Ms. Curtis's residence.

30.     As for Defendant Stephens' sworn representation that he attempted to serve Ms. Curtis at her residence at 8:45 am on April 29, 2019, undersigned counsel has located eight (8) affidavits of service Defendant Stephens filed in other cases in which he swore he was attempting service of process in the Fort Totten neighborhood (including at 5324 Rock Creek Church Road, N.E., two units at 4530 Fort Totten Drive, N.E., two units at 50 Hawaii Avenue, N.E., and 4511 2nd Street, N.E., 4500 Fort Totten Drive, N.E., and 4505 Clermont Drive, N.E.) in the few minutes before and after he swears he attempted service on Ms. Curtis at her Blaine Street address.  Taking the Hawaii Avenue address, at which Defendant Stephens swore to have attempted service four minutes before he swears to have attempted service on Ms. Curtis, Google Maps shows that address to be 7.2 miles (and 25 minutes of drive time) from Ms. Curtis's residence.  Moreover, taking Defendant Stephens's affidavits of service at face value would have had him serving summonses and complaints at five residences in the Fort Totten area, somehow traveling 7.2 miles in four minutes to attempt personal service and then post a Notice of Quit on Ms. Curtis's door, and then going back to the same Fort Totten neighborhood he had just left to serve three more summonses and complaints.

31.     Given that Defendant Stephens swore that both instances of alleged attempted service on Ms. Curtis occurred at times when he was serving multiple sets of summonses and complaints in a completely different areas of town, the only rational conclusion is that Defendant Stephens falsified his affidavit of service on Ms. Curtis and had the misfortune to have made up

10

times and dates of attempted service where he had sworn in other cases that he was somewhere else.

### Facts Relating to Keisha Whitlock

32. Keisha Whitlock's landlord sued her for possession of her unit in *Takoma Place Investor, LLC v. Whitlock*, No. 2019 LTB 001506, which was filed in L&T Court on January 23, 2019. That suit sought possession of Ms. Whitlock's unit (subject to her right to redeem by paying any back rent owed), as well as a money judgment of $2,941.00.

33. On February 11, 2019, Defendant Stephens purported to swear to an affidavit of service in which he (1) falsely alleged to have diligently attempted to serve Ms. Whitlock personally at 9:06 pm on February 9, 2019, and at 10:06 am on February 11, 2019; and (2) falsely alleged to have posted a copy of the summons and complaint on Ms. Whitlock's door at 10:06 am on February 11, 2019.

34. The affidavit of service, while appearing in order on its face, is false and fraudulent in the following respects: (1) it does not appear to be actually signed by Defendant Stephens or the listed notary public; (2) Defendant Stephens did not, as he purports to swear, make two diligent attempts at personal or substituted service; and (3) Defendant Stephens did not, as he purports to swear, actually post the summons and complaint from the eviction action on the door of Ms. Whitlock's unit.

35. Indeed, Ms. Whitlock's counsel in her eviction action sought and received from Ms. Whitlock's landlord, discovery in the form of copies of footage from a security camera operating at Ms. Whitlock's apartment complex. A review of that camera footage in the time frame during which Defendant Stephens has sworn to have attempted service at Ms. Whitlock's

residence shows that Defendant Stephens neither entered nor left Ms. Whitlock's apartment complex at or near the time frames alleged.

36. Moreover, mapping the paths allegedly traveled by Mr. Stephens on the days he allegedly attempted service on Ms. Whitlock shows that Defendant Stephens's movements those days, if his affidavits were accurate and not falsified, would have been improbable and nonsensical. As once example, if Defendant Stephens's affidavits of service were true, he would have made three different visits to Ms. Whitlock's door within a few minutes of each other on February 9, 2019 to make three separate attempts to serve three different lawsuits on Ms. Whitlock, and then would have done exactly the same thing two days later.

## COUNT I
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692e – False Representations In Connection With Collection of a Debt

37. Plaintiffs reallege and incorporate the allegations in Paragraphs 1-36 as if set forth herein.

38. Defendant Karl Stephens and his company, Metropolitan Process Services, Inc., are debt collectors for purposes of the FDCPA because they regularly perform debt collection services in executing affidavits of service that are used as the condition precedent to the filing of a debt collection action in in L&T Court or are for the purpose of satisfying the L&T Court that proper service had been effected in a debt collection action and that the case thus may proceed to judgment.

39. Indeed, all three actions against Plaintiffs identified in this Complaint are, by their very nature, debt collection actions for which Defendant provided services. With respect to Ms. Curtis, Defendant Stephens submitted a false affidavit of service alleging that he served Ms. Curtis with a Notice to Quit advising her that she would be subjected to an eviction action if she

did not reimburse her landlord for the cost of her broken balcony door.  When Ms. Curtis took no action, because she had not received the Notice to Quit, Defendant Stephens's affidavit supplied the condition precedent for filing a suit against her in L&T Court.  With respect to Ms. Brooks and Ms. Whitlock, Defendant Stephens submitted false affidavits of service which allowed actions seeking money damages for allegedly-owed back rent to proceed against both of them.

40. As many courts have held, the process server exception to the definition of "debt collector" does not apply to process servers who allegedly engaged in "sewer service" and executed false affidavits of service alleging attempts at service that did not occur.  The process server exception in the FDCPA applies to conduct of process servers as messengers, the mere service of process, and does not protect those who lie about attempting or effecting service.

41. Defendants, through Defendant Stephens, made false representations in connection with the collection of a debt by lying about making attempts to serve process on Plaintiffs.  These lies allowed debt collection lawsuits to commence or to proceed past the initial hearing stage.

42. As a result of Defendants' misconduct, Plaintiffs have suffered actual damages in having to make repeated appearances in court and/or in court-ordered mediations, in actions that commenced and/or proceeded only because of Defendants' actions in making false representations regarding attempts to effect service of process on Plaintiffs.  Plaintiffs also are entitled to recovery of statutory damages, attorneys' fees, and costs.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court enter judgment in each of Plaintiffs' favor against both Defendants, and that each Plaintiff be awarded the following damages:

(1) From each of the Defendants, statutory damages in the amount of $1,000.00;

(2) From Defendants jointly and severally, recovery of all actual damages from having to participate in eviction actions premised on Defendants' falsified affidavits of service;

(3) From Defendants jointly and severally, recovery of the costs, including reasonably attorneys' fees, incurred in bringing and maintaining this action; and

(4) All other relief the Court may fine just and proper.

Respectfully submitted,

/s/  John F. O'Connor
John F. O'Connor
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-8095 – telephone
(202) 429-3902 - facsimile
joconnor@steptoe.com